**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BILAL MUHAMMAD,** | § | |
| **Plaintiff,** | § | |
| | § | **EP-19-CV-51-KC** |
| **v.** | § | **(EP-19-CV-367-KC)[1]** |
| | § | |
| **RICHARD WILES, Sheriff, *et al*.,** | § | |
| **Defendants.** | § | |

## ORDER OVERRULING THE PLAINTIFF'S OBJECTIONS, ACCEPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE, AND DISMISSING PLAINTIFF'S COMPLAINT

The Court, after considering Bilal Muhammad's complaint, the report and recommendation of the United States Magistrate Judge, and Muhammad's objections, approves the report and recommendation and adopts it as its opinion in this matter. It accordingly dismisses Muhammad's civil rights complaint.

## BACKGROUND

On December 30, 2015, police responded to reports of shots fired at a residential building where Muhammad rented a room in El Paso, Texas. *Muhammad v. Wiles*, No. EP-19-CV-367-KC, 2020 WL 1234946, at *1 (W.D. Tex. Mar. 13, 2020), *aff'd but criticized*, No. 20-50279, 2022 WL 73047 (5th Cir. Jan. 7, 2022). They arrested Muhammad after they ordered him out of the building, and he laid down an assault rifle and a pistol. *Id*. They discovered the body of Lane William Wiscomb inside the building. *Id*. They determined Wiscomb died from gunshot wounds. *Id*.

Muhammad was charged with murder and booked into the El Paso County Detention Center. *Id.* He was indicted on March 9, 2016, for murder, in violation of Texas Penal Code § 19.02, under cause number 20160D01015 in the 168th Judicial District Court of El Paso County.

---

[1] The Court consolidated EP-19-CV-367-KC with EP-19-CV-51-KC. *See* Order, ECF No. 61.

*Id*. Muhammad has remained a pretrial detainee in the custody of Defendant Sheriff Richard Wiles at the El Paso County Jail Annex (EPCJA) for more than seven years awaiting his trial.[2] *Id*.

### A.  EP-19-CV-51-KC

In EP-19-CV-51-KC, Muhammad relied on multiple theories to request "a temporary restraining order … and preliminary injunction directing … El Paso County Sheriff [Richard Wiles] to provide him a kosher diet." *Muhammad v. Wiles*, No. EP-19-CV-51-KC-LS, 2019 WL 13301479, at *1 (W.D. Tex. Mar. 5, 2019). He claimed he followed the Laws of Kashruth, and his faith required him to eat kosher foods. *Muhammad v. Wiles*, No. EP-19-CV-51-KC, 2019 WL 13301657, at *1 (W.D. Tex. Mar. 25, 2019), *superseded*, No. EP-19-CV-51-KC, 2019 WL 13301701 (W.D. Tex. July 16, 2019). *Id*. He alleged Wiles denied him his "right" to a kosher diet. *Id*. He asserted this right arose from (1) the Religious Land Use and Institutionalized Persons Act (RLUPA), 42 U.S.C. § 2000cc–1 *et seq.*; (2) the First Amendment's Free Exercise Clause; and (2) the Fourteenth Amendment's Equal Protection Clause. *Id.* His motion was denied "because he did not exhaust his administrative remedies before he filed his case, as required by the Prison Litigation Reform Act (PLRA)." *Muhammad*, 2019 WL 13301701, at *5. He appealed and his case was reversed and remanded after the Fifth Circuit Court of Appeals concluded there was "a genuine dispute of material fact as to whether Muhammad exhausted administrative remedies." *Muhammad v. Wiles*, 841 F. App'x 681, 685 (5th Cir. 2021).

### B.  EP-19-CV-367-KC

While Muhammad's appeal in EP-19-CV-51-KC was pending, he filed a 168-page

---

[2]  Muhammad's jury trial will begin on August 23, 2023. *See* El Paso County Case Records Search, https://casesearch.epcounty.com/PublicAccess/CaseDetail.aspx?CaseID=7481929 (last visited May 15, 2023).

handwritten civil rights complaint pursuant to 42 U.S.C. § 1983 in EP-19-CV-367-KC. *Muhammad*, 2020 WL 1234946, at *1. He sought injunctive relief and damages based on claims arising under RLUIPA; the First Amendment; the Eighth Amendment; the Fourteenth Amendment; and civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), § 18 U.S.C. § 1964(c). *Muhammad v. Wiles*, No. 20-50279, 2021 WL 5504760, at *1 (5th Cir. Nov. 23, 2021), *opinion withdrawn and superseded on denial of reh'g*, No. 20-50279, 2022 WL 73047 (5th Cir. Jan. 7, 2022). He also raised state law claims alleging violations of the Texas Religious Freedom Restoration Act (TRFRA), TEX. CIV. PRAC. & REM. CODE ANN. § 110.003; state law claims of breach of contract; and state tort claims for intentional infliction of emotional distress, conspiracy, and general breach of duty. *Id*. Specifically, he asserted Defendants did not provide "standard kosher meals that follow orthodox kashrut … laws" which met his religious obligations. *Muhammad*, 2020 WL 1234946, at *1 (quoting Pl.'s Compl., ECF No. 62, p. 14).[3] He conceded Defendants did provide an "El Paso, Texas kosher menu" for EPCJA prisoners, but asserted these meals did not meet his religious requirements. *Id*. (citing Pl.'s Compl., ECF No. 62, pp. 54–55 ("El Paso County … implement[ed] … the policy … of 'El Paso Texas, kosher menu' …"); Pl.'s Compl., ECF No. 62, Ex. 1 (Kosher Menu), pp. 180–181; Pl.'s Compl., ECF No. 62, Ex. 2 (Operating Agreement—Food Services), pp. 182–203). He asserted Defendants "placed a substantial burden on the free exercise of his religious beliefs [without] a compelling government interest." *Id*. (quoting Pl.'s Compl., ECF No. 62, p. 14). He further asserted Defendants "established a state-endorsed religion . . . to crush [his] religious beliefs … to either make him …

---

[3] "ECF No." refers to the Electronic Case Filing (ECF) number for documents docketed in EP-19-CV-51-KC. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

convert or … suffer … from eating the unhealthy diet." *Id*. (quoting Pl.'s Compl., ECF No. 62, pp. 25–26). He argued Defendants had not "heeded … the Religious Land Use + Institutionalized Persons Act (RLUIPA) which … provide[d] greater protection than the" First Amendment. *Id*. (quoting Pl.'s Compl., ECF No. 62, p. 28). He maintained "the gravamen" of his complaint was Defendants have "denied him the right to freely practice his religion." *Id.* (quoting Pl.'s Compl., ECF No. 62, p. 54). He claimed he had exhausted his administrative remedies. *Id*. (citing Pl.'s Compl., ECF No. 62, p. 13). He asked the Court to intervene in his behalf and order Defendants to provide "nutritionally sufficient orthodox kosher meals that do not offend his religious beliefs." *Id*. (quoting Pl.'s Compl., ECF No. 62, p. 62). He also asked for compensation in the amount of $10,000 per day from February 1, 2019, to the date the Court entered a final judgment giving him relief. *Id*. (citing Pl.'s Compl., ECF No. 62, p. 164).

The Court thoroughly reviewed Muhammad's RLUIPA and First Amendment claims. *Id*. at *2–*5. It concluded the "balance of equities favors the exercise of restraint in granting [Muhammad's] request for injunctive relief requiring judicial intervention in matters involving internal prison operations" and denied his request for a temporary restraining order and preliminary injunction. *Id*. at *6. It then screened Muhammad's RLUIPA and First Amendment claims under 28 U.S.C. § 1915A. *Id*. at *6–*7. It noted "the gravamen" of Muhammad's complaint was that Defendants had "denied him the right to freely practice his religion" by denying him a particularized kosher diet, when by his own admission Defendants already provided prisoners at the EPCJA with kosher meals—albeit kosher meals that did not meet Muhammad's standards. *Id*. at *7 (quoting Pl.'s Compl., ECF No. 62, pp. 54–55). Hence, it concluded that Muhammad was "not entitled to relief under RLUIPA because Defendants [could] demonstrate a compelling

4

interest in refusing to provide an individualized diet to Muhammad in particular, and its policy of denying individualized meals to prisoners in general may be the least restrictive means of achieving its penological interest in the effective functioning of EPCJ." *Id*. Moreover, it noted "the Fifth Circuit has consistently held that prison officials 'need not respond to particularized religious dietary requests to comply with the First Amendment.' " *Id*. (quoting *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007)). Thus, the Court concluded that "Muhammad's complaint lack[ed] an arguable basis in either law or fact" and was subject to summary dismissal under 28 U.S.C. § 1915A. *Id*. So, the Court dismissed Muhammad's complaint as frivolous.

The Fifth Circuit affirmed the Court's denial of injunctive relief. *Muhammad v. Wiles*, No. 20-50279, 2022 WL 73047, at *2 (5th Cir. Jan. 7, 2022). It also noted the Court "addressed and disposed of Muhammad's claims for … damages under the RLUIPA and the First Amendment." *Id.* at *1. But it observed the Court "did not address, much less dismiss, Muhammad's claims arising under the Fourteenth Amendment, the Eighth Amendment, the RICO statute, the TRFRA, and state tort and contract law." *Id.*

## C. Consolidation

For efficiency, the Court consolidated Muhammad's unadjudicated claims in both of his kosher meal cases into EP-19-CV-51-KC, and closed EP-19-CV-367-KC. Muhammad's live pleading, then, is the more comprehensive complaint originally filed in case number EP-19-CV-367-KC (now ECF No. 62 in the instant case).

## REPORT AND RECOMMENDATION

The United States Magistrate Judge to whom the Court referred this matter screened Bilal Muhammad's remaining claims pursuant to 28 U.S.C. § 1915A. R. & R., ECF No. 101. After

completing his review, he recommended that the Court dismiss Muhammad's previously unaddressed claims, merge the dismissal of these claims with the Court's earlier dismissal of Muhammad's RLUIPA and First Amendment claims, and dismiss his complaint with prejudice. *Id.* at 12. He reasoned:

### A. Fourteenth Amendment Due Process

Muhammad's due process argument is that the defendants violated his "right to be free from punishment as a pretrial detainee." *Id*. at 4 (quoting Pl.'s Compl., ECF No. 62, p. 159) (*see Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.")). But Muhammad fails to plead facts showing that Defendants' failure to tailor their kosher menu to accommodate his idiosyncratic needs is punitive, and the Fifth Circuit has identified legitimate and compelling reasons supporting that decision. *Id*. at 4–5 (*see Baranowski*, 486 F.3d at 122 ("This circuit has already ruled that prisons need not respond to particularized religious dietary requests to comply with the First Amendment.").

### B. Fourteenth Amendment Equal Protection

Muhammad also alleges that the defendants violated "the 14th Amendment's equal protection law not to be punished and discriminated against because of his sect of Judaism." *Id*. at 5 (quoting Pl.'s Compl., ECF No. 62, p. 159). To state an equal protection claim, Muhammad "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Id*. (quoting *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001)). Hence, his equal protection claim fails if he

6

does not allege any facts showing that others are similarly situated. *Id.* (citing *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015) ("deeming allegations 'insufficient to show disparate treatment where plaintiffs have failed to allege any facts showing that [others were] similarly situated' ") (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 213 (5th Cir. 2009)). Furthermore, Muhammad does not allege or provide evidence that Defendants (1) provide superior treatment to similarly-situated El Paso County jail inmates with different religious beliefs, or (2) are motivated by intentional or purposeful discrimination in serving the kosher meals that Muhammad now criticizes. *Id.*

### C. Eighth Amendment

Muhammad alleges that the defendants are "in violation of the 8th Amendment's cruel and unusual punishment and excessive fines clauses." *Id.* (quoting Pl.'s Compl., ECF No. 62, p. 159). But Muhammad is "a pretrial detainee," so his constitutional claims are evaluated under the Fourteenth Amendment's due process clause—addressed above—instead of the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* (citing *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("[A] pretrial detainee's constitutional claims are considered under the due process clause instead of the Eighth Amendment.").

### D. Civil Racketeer Influenced and Corrupt Organizations Act (RICO)

Muhammad alleges civil RICO violations based on the Defendants' failure to provide him a "healthy kosher diet." *Id.* at 6 (citing Pl.'s Compl., ECF No. 62, pp. 245–253). To state a viable civil RICO claim, Muhammad must plead (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Id.* at 5–6 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Muhammad does not refer to any racketeering activity or allege any facts establishing an

enterprise in his complaint. *Id*. at 6.

### E.  Texas Religious Freedom Restoration Act (TRFRA)

Muhammad makes conclusory assertions that Defendants violated his rights under the TRFRA, but provides no supporting facts. *Id*. (citing Pl.'s Compl., ECF No. 62, p. 160). Muhammad's "[c]laims under TRFRA may be resolved by consideration of case law applying RLUIPA and its predecessor, the Religious Freedom Restoration Act of 1993." *Id*. at 7. But Muhammad's RLUIPA claim was previously screened and dismissed under 28 U.S.C. § 1915A because there was "a compelling interest in refusing to provide an individualized diet to Muhammad in particular" and "the policy of denying individualized meals to prisoners in general may be the least restrictive means of achieving [the jail's] penological interest in the effective functioning of the [jail]." *Id*. (quoting *Muhammad*, 2020 WL 1234946, at *4, *aff'd but criticized*, 2022 WL 73047).

### F.  Breach of Contract

Muhammad alleges that "the Defendants-EPCJA" executed a food services contract for the jail and that EPCJA "breached the contract by not providing healthy meals … by breaking the laws of the land … and [providing] the El Paso, Texas kosher menu." *Id*. (citing Pl.'s Compl., ECF No. 62, p. 153). He provides a copy of the food services contract which states defendant "ARAMARK hereby agrees to furnish nutritious, wholesome, and palatable food to inmates, staff, and visitors in accordance with this agreement." *Id*. at 10 (*see* Pl.'s Compl., Ex. 2 (Operating Agreement—Food Services), p. 182). Muhammad is clearly not a named party to the food services contract, yet he claims he is a third-party beneficiary eligible for damages because of its breach. *Id*. at 8. The fact that Muhammad might receive an incidental benefit from a contract does not give him a right of

action to enforce the contract. *Id.* at 9 (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)).

### G.  Intentional Inflection of Emotional Distress

Muhammad asserts a state law intentional inflection of emotional distress claim against all Defendants—again with no supporting facts. *Id.* at 11. To recover damages, Muhammad must "show (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Id.* at 11 (citing *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)). Moreover, when another cause of action covers the substance of Mohammad's complaint, he "cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, [the alternate] claim." *Id.* (quoting *Hoffmann-La Roche Inc.*, 144 S.W.3d at 448). Muhammad explains "the gravamen" of his complaint is that Defendants "denied him the right to freely practice his religion . . .," and sues based on multiple alleged constitutional violations and relevant statutes such as the RLUIPA and TRFRA. *Id.* (citing Pl.'s Compl., ECF No. 62, p. 54). Muhammad has not alleged independent facts to support a standalone intentional infliction of emotional distress claim, much less facts supporting "severe" emotional distress claim. *Id.*; *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) ("[I]ntentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies.").

### H.  Conspiracy

Muhammad asserts Defendants conspired to deprive him of his rights and negligently failed to prevent such violations. *Id.* at 12 (citing Pl.'s Compl., ECF No. 62, p. 163). His assertions

merely rehash previously screened claims. *Id*. As his previously screened claims fail, "so do these rehashed claims cloaked as conspiracy and negligence." *Id*.

### STANDARD OF REVIEW

A party who files timely written objections to a magistrate judge's report is entitled to a "de novo" review of those portions of the report to which the party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The objections, however, must specifically identify those findings or recommendations which the party wishes the district court to consider. 28 U.S.C.§ 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2); W.D. Tex. Local R. app. C 4(b). And a district court need not consider "frivolous, conclusive, or general objections." *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)). As to other portions of the report—or when a party does not file written objections—the court applies a "clearly erroneous, abuse of discretion and contrary to law" standard of review. 28 U.S.C. § 636(b)(1)(A); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). After completing its review, a court may accept, reject, or modify the report, in whole or in part. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

### PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

Muhammad submitted the following objections in a 64-page response to the report and recommendation:

A. Because Muhammad demanded a jury trial on all issues, his case may not be heard by a magistrate judge without the consent of the parties. Obj., ECF No. 117 at 1.

B. The Court would deny Muhammed's Seventh Amendment right to a jury trial if it accepted the report and recommendation and denied him a trial on all issues. *Id.* at 2. Indeed, the report and recommendation amount to a bench trial on the merits of Muhammad's claims and illegally usurps the

jury's role. *Id.* at 9.

C.  Dismissals for failure to state a claim are viewed with disfavor. *Id.* at 4.

D.  The report "uses a childish rudimentary 'cut & past' method" which takes Muhammad's claims out of context. *Id.* at 5. It ignores Muhammad's declaration "under penalty of perjury that [he is] not getting from Defendants an actual kosher diet according to Jewish law, not [because of his] particular beliefs, personal dissatisfaction, or idiosyncratic needs as falsely portrayed by the Court." *Id*. It also ignores Muhammad's claim that he is an orthodox Jew, Texas Business and Commerce Code § 17.821(a) defines "kosher food" as "food prepared and served in conformity with orthodox Jewish religious requirements," and the state law protects all Jews. *Id.* at 6.

E.  The Magistrate Judge and the District Judge have advanced "a wrongful &/or inappropriate inclination &/or preconceived opinion toward [him]" and they "are extremely biases, hostile, prejudicial, favor EPCJA, and there is no way he can get fairness & due process of law." *Id.* at 8, 41.

F.  The report addresses less than ten percent of Muhammad's facts and claims. *Id.* at 10.

(1) The Magistrate Judge did not afford Muhammad's Fourteenth Amendment due process and equal protection claims strict scrutiny analysis—despite his membership in a suspect class (African-Italian-Jew)—and did not prove that he was offered kosher meals. *Id.* at 24, 34, 36.

(2) The Magistrate Judge erred in fact and law when he concluded Muhammad failed to state a substantive civil RICO claim based the Defendants' failure to prove him with a healthy kosher diet. *Id.* at 24.

G.  Because Muhammad has not had the benefit of discovery, he "cannot present facts essential to justify the opposition to the" report and recommendation and the court must stay it. *Id.* at 50.

H.  Muhammad claims his case is most like *Atomanczyk v. Texas Department of Criminal Justice*, No. 4:17-CV-00719, 2021 WL 2915030 (S.D. Tex. July 12, 2021) and *Moussazadeh v. Texas Department of Criminal Justice*, 703 F.3d 781, 794 (5th Cir. 2012), *as corrected* (Feb. 20, 2013) and suggests the Court should, based on these cases, revisit his RLUIPA claim. *Id.* at 51, 53.

## ANALYSIS

### A. Magistrate Judge

Muhammad observes he did not consent to a hearing before the Magistrate Judge. Obj., ECF No. 117 at 1. He suggests the referral effectively denies him the right to a jury trial. *Id.*

The Court may, on its own motion, to refer a pending matter to a magistrate judge for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). It may not, however, permit a magistrate judge to finally adjudicate a civil case without the consent of the parties. *Id.* § 636(c)(1). It did not permit the Magistrate Judge to enter a final judgment in this matter—only make a recommendation.

Muhammad's objection is overruled.

### B. Seventh Amendment

Muhammed contends he has a Seventh Amendment right to a jury trial. Obj., ECF No. 117 at 2. He argues the report and recommendation of the Magistrate Judge illegally usurps the jury's role in his case. *Id.* at 9.

The Seventh Amendment provides "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury should be preserved." U.S. Const. amend. VII. The Seventh Amendment right to a "jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). Accordingly, the Seventh Amendment provides the right to a jury trial to a plaintiff seeking legal relief pursuant to 42 U.S.C. § 1983. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526

U.S. 687, 709 (1999).

"This right, however, does not guarantee jury resolution of all factual disputes that arise in the course of litigation." *Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010). So, for example, a dismissal "pursuant to a valid ... motion [to dismiss for failure to state a claim] does not violate [a plaintiff's] right to a jury trial under the Seventh Amendment." *Haase v. Countrywide Home Loans, Inc*., 748 F.3d 624, 631 n.5 (5th Cir. 2014). Likewise, a dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) or 1915A(b) of a prisoner's complaint after a screening court determines the action is frivolous, malicious, or fails to state a claim does not violate a plaintiff's right to a jury trial under the Seventh Amendment. *Hicks v. Tarrant Cnty. Sheriff's Dep't*, 352 F. App'x 876, 878 (5th Cir. 2009).

Muhammad's objection is overruled.

### C.  Dismissal for Failure to State a Claim

Muhammad asserts that dismissals for failure to state a claim are viewed with disfavor. Obj., ECF No. 117 at 4.

A court is required by statute to dismiss a prisoner's civil rights suit if it determines the complaint does not state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii) and 1915A(b)(1). When doing so, it applies the same standard used to review a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998).

The Court views a motion to dismiss under Rule 12(b)(6) with disfavor. *Lowrey v. Tex. A & M Univ. Sys*., 117 F.3d 242, 247 (5th Cir. 1997). Before granting a motion, it must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the

plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). It must interpret Rule 12 in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It cannot look beyond the face of the pleadings in resolving a Rule 12(b)(6) motion. *Doe ex rel. Magee v. Covington Cnty, Sch. Dist.*, 649 F.3d 335, 341 (5th Cir. 2011) (explaining that "[w]e examine only the allegations within the four corners of the complaint"), *aff'd on rehearing en banc*, 675 F.3d 849 (5th Cir. 2012). Still, it must require a plaintiff to plead specific facts, not mere conclusory allegations, to avoid dismissal. *Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted). And it must demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It must ensure the plaintiff pleads "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It should not grant the motion when the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).

Muhammad avers "the gravamen" of his complaint is that the Defendants have "denied him the right to freely practice his religion." Pl.'s Compl., ECF No. 62, p. 54. He explains Defendants do not provide "standard kosher meals that follow orthodox kashrut . . . laws" which

meet his religious obligations. *Id*. at p. 14. He concedes Defendants do provide an "El Paso, Texas kosher menu" for EPCJA prisoners, but he maintains these meals do not meet his religious requirements. *Id*. at pp. 14, 54–55. He contends Defendants have, therefore, "placed a substantial burden on the free exercise of his religious beliefs [without] a compelling government interest." *Id*. at 14. He further contends Defendants have "established a state-endorsed religion . . . to crush [his] religious beliefs . . . to either make him . . . convert or . . . suffer . . . from eating the unhealthy diet." *Id*. at pp. 25–26. He also complains that the jail's food both under-nourishes and over-nourishes him. *Id.* at p. 15. He sues based on multiple alleged constitutional violations and statutes.

The Court accepts Muhammad's well-pleaded facts as true and views them in the light most favorable to him. *Bustos*, 599 F.3d at 461. It also rejects Muhammad's conclusory allegations, *Schultea*, 47 F.3d at 1431. It observes Defendants must provide a food service for hundreds of prisoners and—according to Muhammad's admission—serves kosher meals. It finds Muhammad fails to state a viable claim on any of his legal theories for the reasons stated in the report and recommendation of the Magistrate Judge. It further finds his pleadings are subject to—and should be—dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii) and 1915A(b)(1)—notwithstanding the fact that dismissal is disfavored. *Lowrey*, 117 F.3d at 247.

Muhammad's objection is overruled.

### D.  Deficiencies in the Report

Muhammad contends the report takes his claims out of context. Obj., ECF No. 117 at 5. It ignores his declaration "under penalty of perjury that [he is] not getting from Defendants an actual kosher diet." *Id*. It also ignores his claim that he is an orthodox Jew. *Id*. at 6.

The Court accepts Muhammad's well-pleaded facts true. *Bustos*, 599 F.3d at 461. Hence, it

accepts his claim that he is an orthodox Jew and his assertion that he is dissatisfied with the food provided at EPCJA. But it also accepts the evidence—presented by Muhammad—that EPCJA offers kosher meals to prisoners. Pl.'s Compl., ECF No. 62, Ex. 1 (Kosher Menu), pp. 174–175. And it concludes he is not entitled to relief on any of his legal theories.

Muhammad's objection is overruled.

### E.  Preconceived Opinions

Muhammad complains the Magistrate Judge and the District Judge are extremely biased against him, and he maintains there is no way he can get a fair hearing. Obj., ECF No. 117 at 8, 41. His justification for claiming bias is that the Magistrate Judge and the District Judge have not agreed with his version of how the law works and have not ruled in his favor.

These are not valid reasons for finding bias. Bias connotes "a favorable or unfavorable disposition or opinion that is somehow *wrongful or inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess … or because it is excessive in degree." *Liteky v. United States*, 510 U.S. 540, 550 (1994) (emphasis in original). Judicial rulings alone almost never constitute a valid basis for a bias claim. *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.").

Muhammad provides no evidence to show the Court relied on an extrajudicial source. He provides no evidence to support a support a conclusion that the Court's disposition of his case is somehow wrongful, inappropriate, or excessive.

Muhammad's objection is overruled.

### F. Strict Scrutiny

Muhammad claims the Magistrate Judge did not afford his Fourteenth Amendment due process and equal protection claims strict scrutiny analysis—despite his membership in a suspect class (African-Italian-Jew)—and did not prove that he was offered kosher meals. Obj., ECF No. 117 at 24, 34, 36.

The Fourteenth Amendment provides a State may not "deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. Consequently, equal protection analysis is triggered whenever "challenged government action classifies or distinguishes between two or more relevant groups." *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993). The nature of the right or classification involved determines which standard of review applies. *Id*. Where "a classification disadvantages a 'suspect class' or impinges upon a 'fundamental right,' the [classification] is subject to strict scrutiny." *Id*. So, for example, " 'all racial classifications [imposed by government] ... must be analyzed by a reviewing court under strict scrutiny." *Johnson v. California*, 543 U.S. 499, 505 (2005) (quoting *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995)). Nonetheless, equal protection "does not take from the States all power of classification." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 271 (1979) (citations omitted). In other words, "[w]hen the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." *Id.*

Muhammad asserts the Defendants have "denied him the right to freely practice his religion" because they do not provide "standard kosher meals that follow orthodox kashrut . . . laws" which meet his religious obligations. Pl.'s Compl., ECF No. 62, pp. 14, 54. He concedes Defendants do provide an "El Paso, Texas kosher menu" for EPCJA prisoners, but he maintains

these meals do not meet his religious requirements. *Id*. at pp. 14, 54–55. He contends Defendants have, therefore, "placed a substantial burden on the free exercise of his religious beliefs [without] a compelling government interest." *Id*. at 14.

Muhammad—as the Magistrate Judge observes—does not allege that similarly-situated El Paso County jail inmates with different religious beliefs receive superior treatment. R. & R., ECF No. 101 at 5. Instead, he asserts Defendants are not providing him kosher food which meets his standards. Consequently, Muhammad does not suggest government action classifies or distinguishes between two or more relevant groups. *Qutb*, 11 F.3d at 492. Moreover, he also does not allege facts showing that the defendants were motivated by intentional or purposeful discrimination in offering kosher meals he does not like. *Id*. So, under any standard of review, Muhammad cannot show he was denied the equal protection of the law.

Muhammad's objection is overruled.

### G.  Civil Racketeer Influenced and Corrupt Organizations Act (RICO) Claim

Muhammad claims the Magistrate Judge erred in fact and law when he concluded that he failed to state a substantive civil RICO claim based the Defendants' failure to prove him with a healthy kosher diet. Obj., ECF No. 117 at 24.

In order to maintain a civil RICO action, Muhammad must show a pattern of racketeering activity connected to the acquisition, establishment, conduct or control of an enterprise affecting interstate commerce. *In re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993). "A pattern of racketeering activity requires two or more [indictable] predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *St Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). The term "enterprise" is

18

defined broadly to include any "group of individuals associated in fact." 18 U.S.C. § 1961(4). Muhammad's vague and conclusory claims are insufficient to show a pattern of racketeering activity.

Muhammad's objection is overruled.

**H. Discovery**

Muhammad claims he "cannot present facts essential to justify the opposition to the" report and recommendation because he has not had the benefit of discovery and the court must stay the proceedings. Obj., ECF No. 117 at 50. Notably, Muhammad does not address what the discovery would have disclosed.

The Court "was authorized to issue a *sua sponte* dismissal order, and it was not required to allow discovery or a jury trial prior to doing so" pursuant to 28 U.S.C. § 1915(e). *Vineyard v. Univ. Health Sys.*, 814 F. App'x 807, 810 (5th Cir. 2020).

Muhammad's objection is overruled.

**I.   Religious Land Use and Institutionalized Persons Act (RLUPA)**

Muhammad claims his case is most like *Atomanczyk v. Texas Department of Criminal Justice*, No. 4:17-CV-00719, 2021 WL 2915030, at *15 (S.D. Tex. July 12, 2021) (denying summary judgment on a RLUIPA claim where plaintiff asserted the kosher food he was offered did not meet his religious dietary restrictions) and *Moussazadeh v. Texas Department of Criminal Justice*, 703 F.3d 781, 794 (5th Cir. 2012), *as corrected* (Feb. 20, 2013) (reversing summary judgment on a RLUPA claim after finding that forcing an inmate to pay for his kosher meals substantially burdened his ability to exercise his religious beliefs) and suggests the Court should revisit his RLUIPA claim. Obj., ECF No. 117 at 51, 53.

Under RLUIPA, a governmental entity may not impose a substantial burden on the religious exercise of an inmate unless the entity demonstrates the imposition of the burden is (1) in furtherance of a compelling governmental interest, and (2) the least restrictive means of furthering such compelling interest. *McFaul v. Valenzuela*, 684 F.3d 564, 575 (5th Cir. 2012). The term "religious exercise" means "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "[A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 569–70 (5th Cir. 2004).

Once a plaintiff makes a showing that a government action creates a substantial burden on a religious exercise, the defendant bears the burden of proving the challenged regulation is the least restrictive means of furthering a compelling governmental interest. *Id*. If the defendant successfully demonstrates a compelling interest as applied to the particular inmate, it must also show that its policy is the least restrictive means of achieving that interest. *Holt v. Hobbs*, 574 U.S. 352, 864 (2015).

" 'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].' " *Id*. (quoting *Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 728 (2014)). In other words, the defendant must show that it lacks other means of achieving its desired goal—other than through the challenged policy. *Id*. This may require a fact-intensive inquiry into the particular costs and risks that a requested exemption may entail. *Chance v. Texas Department of Criminal Justice*, 730 F.3d 404, 418 (5th

20

Cir. 2013).

Courts must also accord due deference to the experience and expertise of prison administrators. *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016). Religious accommodations must never override other significant interests in maintaining order and safety, and the courts give deference to prison officials in establishing necessary regulations and procedures to maintain good order, security, and discipline. *Id.* at 264–65. As a result, costs, limited resources, and prison security are all compelling state interests under RLUIPA. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

In addition, RLUIPA does not create a cause of action against defendants in their individual capacities. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 330–31 (5th Cir. 2009). The statute also does not create a claim for damages against defendants in their official capacities because such claims are barred by the Eleventh Amendment. *Id.* at 331. As a result, the only relief available under RLUIPA is prospective injunctive relief. RLUIPA, however, "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." *Ali v. Stephens*, 822 F.3d 776, 792 (5th Cir. 2016) (quoting *Garner v. Kennedy*, 713 F.3d 237, 245 (5th Cir. 2013) (quoting 42 U.S.C. § 2000cc–3(c))).

There is no question that keeping a kosher diet qualifies as a religious exercise for the practice of Judaism under RLUIPA's generous definition. *Guzzi v. Thompson*, 470 F. Supp. 2d 17, 25 (D. Mass. 2007), *vacated and remanded*, No. 07-1537, 2008 WL 2059321 (1st Cir. May 14, 2008) (stating that the practice of "keeping kosher" constitutes a religious exercise for the Jewish faith).

In *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007), the Fifth Circuit discussed dietary

claims in light of RLUIPA. The summary judgment evidence showed that the general food budget for the Texas Department of Criminal Justice (TDCJ) was inadequate to cover the increased cost of operating separate kosher kitchens or bringing in kosher meals from the outside. *Id*. at 118. It further showed taking money from the general food budget to provide kosher meals to some inmates would diminish TDCJ's ability to provide nutritionally adequate meals to all prisoners. *Id*. It also showed such a policy would breed resentment among other inmates, and there would be an increased demand by other religious groups for special diets which would exacerbate the budget issue. *Id.* After considering this evidence, the Fifth Circuit found that TDCJ's policy of not providing kosher meals to inmates was "related to maintaining good order and controlling costs and, as such, involve[d] compelling governmental interests." *Id*. at 125. It also found that the policy was the least restrictive means of maintaining good order and controlling costs. Accordingly, it concluded TDCJ was not required to provide kosher meals to inmates and the district court properly granted the defendants summary judgment on Baranowski's RLUIPA claim. *Id*. at 126.

In response to pressure from various stakeholders, however, the Texas Board of Criminal Justice elected to ignore the added cost of providing kosher meals to inmates and established a kosher kitchen at several facilities. Consequently, in *Moussazadeh v. Texas Department of Criminal Justice*, 703 F.3d 781 (5th Cir. 2012), the Fifth Circuit found that kosher food was a "generally available benefit" within TDCJ and, therefore, the "denial of religiously sufficient food where it is a generally available benefit would constitute a substantial burden on the exercise of religion." *Id*. at 793.

In Mohammad's case, the "El Paso Texas, kosher menu" is an available benefit at the

EPCJA. Pl.'s Compl., ECF No. 62, Ex. 1 (Kosher Menu), pp. 174–175. Documents provided by Muhammad show El Paso County pays a food vendor $4.50 per kosher meal and between $1.10 and $1.32 per non-kosher meal for EPCJA prisoners. *Id.*, Ex. 2, p. 203. Muhammad argues, however, that the "El Paso, Texas kosher menu" does not meet his personal religious requirements. *Id.*, p. 23. Hence, he asks the Court to order Defendants to prepare kosher meals for him which meet his personal understanding of the religious requirements for kosher meals.

In *Atomanczyk*, the district court noted "[n]either party makes a sustained argument to affirmatively establish whether RLUIPA requires the government to accommodate the nuanced dietary requirements of a particular religious sect, including Atomanczyk's particular sect of Judaism." 2021 WL 2915030, at *14. It accordingly denied summary judgment and directed the parties to address standards in additional briefings. *Id.*

The Fifth Circuit, however, has already ruled that prisons need not respond to particularized religious dietary requests in order to comply with the First Amendment. In *Kahey v. Jones*, 836 F.2d 948 (5th Cir. 1988), it held that the prison was not required to accommodate a Muslim inmate's requirements regarding the content and preparation of his food. *Id.* at 950–51. It reasoned that the prison had a "legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant." *Id.* at 950. It found that granting the inmate's request would be expensive, would divert resources from other penological goals, and could result in the perception of favoritism. *Id.* at 951; *see also Ali v. Stephens*, 822 F.3d 776, 792 (5th Cir. 2016)(" '[C]ost reduction, as a general matter, is unquestionably a compelling interest of TDCJ.' ") (quoting *Moussazadeh*, 703 F.3d at 795). It also found that there were simply no ready alternatives to satisfy the inmate's personal dietary requirements at a *de minimis* cost to the prison.

*Id*.

As the Court noted above, under RLUIPA, costs, limited resources, and prison security are all compelling state interests. *Cutter*, 544 U.S. at 723. Defendants have a legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant. Granting Muhammad an individualized meal plan would encourage others to request their own personal meal plans, would result in greater costs to the county, would impose an "unjustified burden on other institutionalized persons," and could "jeopardize the effective functioning" of the EPCJA. *Id*. at 726. Consequently, Defendants can demonstrate a compelling interest in refusing to provide an individualized diet to Muhammad in particular, and its policy of denying individualized meals to prisoners in general may be the least restrictive means of achieving its penological interest in the effective functioning of the EPCJA. Consequently, EPCJA should be "free to resist the imposition" of providing a special, individualized diet to Muhammad. *Id*.

Muhammad's objection is overruled.

**J.  Remaining Objections**

Any remaining objections by Muhammad are "frivolous, conclusive, or general," need not be addressed by the Court, and are overruled. *Battle*, 834 F.2d at 421.

## CONCLUSION AND ORDERS

After completing a de novo review of Muhammad's objections to the report and recommendation of the Magistrate Judge, the Court concludes it should overrule them. It further concludes that the Magistrate Judge's remaining findings and conclusions are neither clearly erroneous nor contrary to law. *Wilson*, 864 F.2d at 1221. It finally concludes "it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations"

made by Muhammad in his complaint. *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir.1996). It therefore enters the following orders:

**IT IS ORDERED** that Muhammad's objections (ECF No. 117) to the report and recommendation of the Magistrate Judge are **OVERRULED**.

**IT IS FURTHER ORDERED** that the report and recommendation of the Magistrate Judge (ECF No. 101) is **ACCEPTED**, and his findings and conclusions are **ADOPTED** by the Court.

**IT IS FURTHER ORDERED** that Bilal Muhammad's complaint (ECF No. 62) and all his claims related to this litigation against any previously named Defendant are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

SIGNED this 26th day of May, 2023.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE